IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY,                    )
KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT,                  )
EUGENE GEORGE, ROBERT HOOVER, WILLIAM                         )
MCCONNELL, MATTHEW AQUILINE, GREGORY R.                       )
HESS, MICHAEL SCHMERBECK, VINCENT DELAZZERO,                  )
and BENJAMIN CAPP,                                            )
as Trustees of, and on behalf of, the                        )
BRICKLAYERS & TROWEL TRADES INTERNATIONAL                     )
PENSION FUND,                                                 )
    620 F Street, N.W.                    )
    Washington, DC  20004                 )
    (202) 783-3788,                       )
                                                         )
                                                         )
JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY,                    )
EUGENE GEORGE, MATTHEW AQUILINE, MICHAEL                      )    Civil Action No.
SCHMERBECK, GREGORY HESS, and PAUL J. SONGER,                 )
as Trustees of, and on behalf of, the                        )
BRICKLAYERS AND ALLIED CRAFTWORKERS                           )
INTERNATIONAL HEALTH FUND,                                    )
    620 F Street, N.W.                    )
    Washington, DC 20004                  )
    (202) 783-3788,                       )
                                                         )
    and                                   )
                                                         )
JIM ALLEN, MATTHEW AQUILINE, LON BEST, JAMES                 )
BOLAND, TED CHAMP, RAYMOND CHAPMAN,                          )
VINCENT DELAZZERO, BRUCE DEXTER, JOHN FLYNN,                 )
EUGENE GEORGE, GREGORY HESS, FRED KINATEDER,                 )
DAN KWIATKOWSKI, KEN LAMBERT, SANTO                          )
LANZAFAME, DICK LAUBER, WILLIAM MCCONNELL,                   )
EDWARD NAVARRO, GERALD O'MALLEY, JOHN                        )
PHILLIPS, CHARLES RASO, MARK ROSE, KEVIN RYAN,               )
GERARD SCARANO, MICHAEL SCHMERBECK, PAUL                     )
SONGER, JOSEPH SPERANZA, and FRED VAUTOUR                    )
as Trustees of, and on behalf of, the                        )
INTERNATIONAL MASONRY INSTITUTE,                             )
    620 F Street, N.W.                   )
    Washington, DC  20004                )
    (202) 783-3788,                      )
                                                         )
                                                         )
                                                         )
       Plaintiffs,         )

2344455

v.                                              )
                                                )
RENO CONSTRUCTION CO., LLC                      )
    1194 24th Avenue                            )
    Hueytown, AL 35023,                          )
                                                )
                       Defendant.                )
                                                )

## COMPLAINT

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

### CAUSE OF ACTION
### Jurisdiction and Venue

1.      This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund"), the fiduciaries of the Bricklayers and Allied Craftworkers International Health fund ("IHF"), and the fiduciaries of the International Masonry Institute ("IMI") to enforce the terms of the Plan and Trust Agreements adopted by the IPF, IHF and IMI, and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145. Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court as to the claims brought on behalf of the IPF, IHF, and IMI.

2.      The IPF, IHF and IMI are administered in the District of Columbia.  Venue for the claims asserted by the IPF, IHF and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

2

2344455

**Parties**

3.     Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, William McConnell, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Benjamin Capp, are Trustees of, and sue on behalf of, the IPF.  The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).  The IPF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.     The IPF is also authorized to effect collections on behalf of the IHF and IMI, pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

5.     Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Eugene George, Matthew Aquiline, Michael Schmerbeck, Gregory Hess, and Paul J. Songer are Trustees of, and sue on behalf of, the IHF.  The IHF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).  The IHF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IHF in their respective capacities as fiduciaries.

6.     Plaintiffs, Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phllips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of the IMI.  The IMI is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer

3

plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IMI trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI in their respective capacities as fiduciaries.

7.    Defendant, Reno Construction Co., LLC ("Reno Construction"), is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of Alabama.

8.    Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

## Violation Charged

9.    Reno Construction, acting through its authorized agents or officers, executed a collective bargaining agreement with the Union. This collective bargaining agreement is annexed hereto as Exhibit A and is hereinafter referred to as the "Agreement."

10.    Pursuant to the Agreement, Defendant agreed to file reports and make certain contribution payments to the IPF, IHF and IMI for covered work performed by its employees.

11.    Having filed some reports and submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

12.    By filing reports and making contributions, Reno Construction has also evidenced an intent to be bound, and thereby bound itself by conduct, to the governing Bricklayer's collective bargaining agreement in the areas where it performed work, both during and after the initial term of the collective bargaining agreement attached hereto as Exhibit A.

13.    An examination of Defendant's books and records ("audit") performed by the independent accounting firm of Calibre CPA Group PLLC covering the time period January

4

2003 through December 2005 revealed that Defendant failed to properly submit required reports and contributions for work performed during this time period.

14.    The total of contributions due the IPF, IHF and IMI by Defendant for work performed during the months of January 2003 through December 2005, as determined by the audit, amounts to $15,697.56.

15.    Under the terms of the Plan and Trust Agreements adopted by the IPF, IHF and IMI, interest in the amount of $2,762.90 calculated from the Due Date at the rate of 15 percent per annum and liquidated damages in the amount of $3,139.52 calculated from the Due Date at the rate of 20 percent per annum have been assessed on such delinquent contributions determined due by the audit.

16.    Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).  Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions in accordance with the terms and conditions of the Agreements.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.  For the total amount of $24,139.88, which is constituted as follows:

a.  For unpaid contributions in the amount of $15,697.56 payable to the IPF, IHF and IMI for the time period January 2003 through December 2005, plus any and all additional amounts found to be due and owing through the date of judgment (ERISA Section 502(g)(2)(A); Collection Procedures);

b.  For interest in the amount of $2,762.90 assessed on such unpaid contributions, calculated at 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(B); Collection Procedures);

5

2344455

c.  For liquidated damages in the amount of $3,139.52, assessed on such unpaid contributions, calculated at the rate of 20 percent per annum from the Due Date (ERISA Section 502(g)(2)(C)(ii); Collection Procedures);

d.  For the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D));

e.  For the costs of conducting the audit in the amount of $2,189.90 (ERISA Section 502(g)(2)(D));

2.  In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

3.  That Defendant be directed to comply with its obligations to submit all required reports and to make all contributions due and owing to the IPF, IHF and IMI and to pay the costs and disbursements of this action.

4.  Such other relief as this Court deems appropriate, including judgment for any contributions and interest thereon that may accrue subsequent to the filing of this complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: _May 6_____, 2008          By: _____
                                   Ira R. Mitzner, DC Bar No. 184564
                                   DICKSTEIN SHAPIRO LLP
                                   1825 Eye Street, NW
                                   Washington, DC  20006
                                   (202) 420-2200

                                   *Attorneys for Plaintiffs*

2344455

EXHIBIT

A

# BUILDING CONSTRUCTION AGREEMENT
# REFRACTORY CONTRACTORS ASSOCIATION OF
# BIRMINGHAM ALABAMA
# DIVISION OF ASSOCIATED GENERAL CONTRACTORS OF
# AMERICA

# GENERAL CONDITIONS FOR MASONRY/REFRACTORY
# CONSTRUCTION

## 1998-2001

This AGREEMENT made and entered into the period September 1, 1998 for Building Construction by and between the Refractory Contractors Association of Birmingham, a division of the Alabama Branch of Associated General Contractors of America, Inc., hereinafter referred to as R.C.A. on behalf of its members and Bricklayers International Union #1 of Alabama.

The words "The Union" when used hereinafter shall, unless the context indicates a different meaning, be understood to refer to the above union having jurisdiction of the men or matter involved.

This Agreement is intended to establish uniform working conditions and rates of pay for Building Construction in the District and is not only for the benefit of the construction employees, but for the benefit of those individual members of the R.C.A., who employ them and who agree to abide by its terms and any other employer who executes an individual contract as stipulated herein.

## SCOPE

This Agreement is for Building Construction as defined in the National AGC Governing Provisions Article 11-B, Section 6, adopted March 17, 1995, i.e., Building Construction includes building structures, modification thereof, or additions or repairs thereto, intended for the use of shelter, protection, comfort or convenience. Building Construction shall include the demolition of and excavation and foundations for building construction.

## COVERAGE

It is further understood and agreed that the Union is the sole and exclusive bargaining agent for representing and for negotiating wages and working conditions for all such construction employees with respect to the work described under SCOPE.

This agreement covers all construction employees of each Contractor for the Craft above.

## APPLICABILITY

The provisions hereof are applicable to the subject contractors and employers only when doing work of the kind defined in SCOPE, hereof. In the event of a work stoppage on any work within

the scope hereof, such stoppage shall not affect the work of the contractor or of any other contractor being done at the place of work stoppage or elsewhere of a kind not within the scope hereof.

## COMPLIANCE

In order that the intention of the parties to comply fully with applicable law and administrative rulings may be fully effectuated, it is further agreed that the provisions hereof with respect to employment practices, are subject to revision by mutual agreement.

## GOVERNMENTAL REGULATIONS

The parties of said Agreement recognize the right of the United States Government to regulate hours, wages and working conditions, and have made this contract with the governmental regulations in mind and with the intent to comply with same, but in the event of conflict between the Agreement and any present or future government regulations, the government regulations shall prevail. If anything in this Agreement conflicts with any Federal or State Laws, that portion of the agreement shall be considered null and void. It is the intent of the Agreement to comply with Title 7 of the Civil Rights Act of 1964 in regards to equal employment opportunity. In the event any provision or provisions of this agreement shall be held to be contrary to law, it shall not affect any of the other provision hereof.

## SELECTION OF EMPLOYEES

It is further agreed that each Contractor is the sole and exclusive agent to determine the qualifications and capabilities of all employees under his or its supervision and may lay off or discharge any employee for just cause. Each Contractor shall have the right to determine his or its own foreman and employee requirements except as may be provided for elsewhere in this agreement.

The Contractor shall at the request of the business agent of the Local Union, within whose jurisdiction the work is to be performed, arrange for a pre-job conference before construction begins. Nothing herein contained shall be construed as prohibiting Contractors subject here to from, so far as lawful, giving consideration to the recommendations of men by the business agent of the Union.

## ANNUAL MEETINGS

The provisions of this Agreement shall continue in full force and effect from date of signing for the period of the agreement, and from year to year thereafter unless terminated or modified. Either the Contractor or the Union shall give sixty (60) days notice prior to the end of any contract year of any desired changes in, modifications of, or termination of this agreement.

## WORKERS' COMPENSATION

Every contractor shall provide Workers' Compensation Insurance in the amounts provided by the laws of the State of Alabama. Each contractor will furnish the Central Alabama Building Trades Council with a certificate of the compensation insurance.

## UNION REPRESENTATIVE

The contractors and subcontractors agree that all duly authorized business representatives of the Building and Construction Trades Council and its affiliated crafts shall be permitted to visit any jobs under the supervision of the contractors or subcontractors during working hours to interview the employees or steward or superintendent of the job. All safety and security rules must be complied with and in no way should the business representatives interfere with the progress of the job.

## MANAGEMENT'S RIGHTS

The contractor retains full and exclusive authority for the management and of its operations and the direction of its work force, except where specifically limited by the clear provisions of this agreement such management rights shall include, but not be limited to the right to establish, change or abolish practices or procedures for the conduct of business; to utilize construction procedure or technique; the right to hire, fire, transfer, relieve, promote or demote employees; to determine the number of hours per day or per week, during which its operations shall be carried on; to determine the number of employees it shall employ; to assign, accomplish, scheduled, reschedule and withdraw work as required, and all other rights for the full completed prosecution of the work.

## COMPLAINTS AND GRIEVANCES

Should any employer and/or union who is party to the Agreement have a complaint or grievance, it shall be settled as follows:

A. When Grievances cannot be settled by the Steward and the Employer's Representative in charge, the matter shall be taken up preferably at the job site with the Representative or agent of the Employer and by the Business Representative of the Union.

B. In the event the grievance cannot be settled as above provided within seven (7) days after it arises, it shall immediately, upon request of either party, be submitted to a joint RCA-Union Committee composed of not less than two (2) members from each side for settlement within seven (7) days. Any majority decision of this joint committee shall be final and binding. If grievance is not resolved by the joint committee, then it must be resolved by final and binding arbitration.

The parties will have seven (7) additional calendar days within which it may refer the dispute to the final and binding arbitration for prompt settlement with the cost to be borne equally. The arbitrator, in the interest of expediency, shall be a resident of the State of Alabama and shall be chosen by the parties during the seven (7) day period the union has to refer the dispute to arbitration, unless agreement on the arbitrator cannot be reached during such period, in which event the arbitrator shall be selected promptly from a list of seven(7) arbitrators supplied by the American Arbitration Association with the parties alternately striking names. No arbitrator shall have the power to add to, or subtract from, or modify any term or condition of this agreement. The arbitrator shall not substitute his discretion for that of the parties hereto. The usage by the arbitrator of past practice shall be limited to situations where the contractual language is not clear.

C. There shall not be any slow downs, or work stoppages, individually or collectively, while complaints or grievances are being adjusted. Any and all Employees who violate this section may be discharged. There shall be no lockouts by the contractors.

D. Any and all Employers shall have the right to suspend construction operations or any part thereof in the event of a labor dispute involving another Craft or Union.

E. There shall be no strikes or picketing against the contractor by the union so long as the contractor abides by the terms of this agreement.

## JURISDICTIONAL DISPUTES

There will be no strikes, no work stoppages or slowdowns or other interference with the work because of jurisdictional disputes.

Work shall be assigned by the Employer in accordance with the procedural rules of the Impartial Jurisdictional Disputes Board and jurisdictional disputes will be settled in accordance with the procedural rules and decisions of such Board or successor agency.

Where a jurisdictional dispute involves any Union or Employer not a party to the procedures established by the Impartial Jurisdictional Disputes Board and is not resolved between the Unions, it shall be referred for resolution to the involved International Unions, with which the disputing contractors Unions are affiliated. The resolution of the dispute shall be reduced to writing signed by representatives of the involved international unions and the employer.

## WORK HOURS AND PREMIUM PAY - RED BRICK

The work week shall start at 6:00 AM on Monday. Contractors may schedule their work week based on the basis of four ten's or five eight's with a provision for a make up day or days due to inclement weather to get in 40 hours at straight time. On all work, unless covered by Federal regulations to the contrary, contractors will not pay overtime until employees work over 40 hours except all work in excess of 10 hours in one day will be paid at time and one-half except work performed on Sunday or holidays which shall be at double-time.

When the contractor changes from five 8 hour's to 4 ten's or vice versa, they shall notify the local union three days prior.

It is the intent of this section that new employees being called out to be given the opportunity to work 40 hours prior to Saturday work and if not those employees be paid on the same basis as the project; that being if the project is being paid on an overtime basis the new hires shall also be paid on the same basis. Employees who fail to work when work is available will be paid on a straight time basis if the project works on Saturday until they get in 40 hours or work over 10 hours.

Employees who work on projects that start during the middle or toward the end of the week shall be paid overtime rate for Saturday and Sunday work.

For the purpose of this agreement, it is the intent of the parties that make up days shall be scheduled for full days, weather permitting. Furthermore, it is not the intent of the parties to allow the splitting of make up days when four ten's are worked.

When a recognized construction holiday falls during the regular scheduled five day work week, all work over 32 hours shall be at time and one-half except Sunday work, which shall be at double-time. When the week is scheduled on four tens, the work week shall be 30 hours with all work over 30 hours at time and one-half except Sunday.

Work performed during Thanksgiving week shall be on a three 8 hour normal week basis or three 10 hour work week basis. All work on a recognized construction holiday shall be at double time.

## TRAVEL AND SUBSISTENCE PAY

There will be no travel or subsistence pay within the jurisdiction of the local union.

## SHIFT WORK

When so elected by the Employer, multiple shifts may be worked. The first shift shall work (8) hours at the regular straight time rate. The second shift shall work seven and one-half (7 1/2) hours and receive eight (8) hours pay at the regular straight time hourly rate. The third shift shall work seven (7) hours and receive eight (8) hours pay at the regular straight time hourly rate. A thirty (30) minute lunch period shall be mutually agreed upon by the Job Superintendent and the Union Representative and shall not be considered as time worked.

Contractors may work two ten hour shifts with the first shift receiving 10 hours work for ten hours pay and the second shift shall receive 10 hours pay for 9 1/2 hours worked. Lunch period shall not be considered as time worked.

## SERVICES

A. The employer shall furnish ice water during hot weather and sanitary drinking cups. Water will be put on the job no later than one hour after work time begins.

B. Employer will provide sanitary toilets and these shall be maintained and cleaned regularly.

C. There will be no drink boxes in operation except before starting time, lunch time and quitting time. No lunch wagons or other sale of food will be permitted except during the thirty-minute lunch period. Employees will not be permitted to bring articles for sale on the job.

## REPORTING TIME

When men are ordered by the employers, or his representative, to report at a specified time and place and are not put to work, weather permitting, he shall be paid two hours for reporting. If the employee is notified the day before and does not report at the specified time, he shall be paid only for the actual time worked.

## HOLIDAYS

The following holidays, together with Sundays, shall be considered as legal holidays and double time the basic rate shall be paid for all work performed on these days: Labor Day, New Year's Day, Fourth of July, Thanksgiving Day, the Friday following Thanksgiving Day and Christmas

Day. There shall be no work of any kind performed Labor Day except to save life or property. If a holiday falls on a Sunday, then the following Monday shall be declared a holiday.

## ADDITIONAL TERMS

Should the Union enter into an agreement with any employer on building construction as defined herein under more favorable terms to the employer than are stipulated herein, the conditions thus established will automatically become part of this agreement. Project, national and maintenance agreements are excluded.

The R.C.A shall advise the unions of any and all employers who delegate bargaining rights; likewise the union shall furnish the R.C.A copies of all agreements signed with individual employers.

## PAY DAY

Wages shall be paid weekly on an established pay day before quitting time. Men quitting shall wait until regular pay day. All fringe benefits to be paid by check on forms that are supplied to the employer by the Union or Fund Administrator.

# SECTION 2

# AGREEMENT FOR

# WAGE RATES AND WORKING CONDITIONS

## BY AND BETWEEN
## THE
## REFRACTORY CONTRACTORS ASSOCIATION OF BIRMINGHAM, ALABAMA
## DIVISION OF THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC.
## AND
## BRICKLAYERS INTERNATIONAL UNION NO. 1 OF ALABAMA

### WORK HOURS AND PREMIUM PAY

A. On all refractory and acid work as defined elsewhere in this agreement all work over 8 hours and work on Saturday shall be paid and one and one-half times. There shall not be make-up day provisions for refractory and acid work.

On refractory and acid work, the standard work shift shall start at 7:00 AM or 8:00 AM.

B. The employer shall hold back no more than three (3) days pay per week.

C. If an employer voluntarily increases the scale of wages, he must continue the same for the duration of the job.

### TRAVEL TIME AND CHANGING JOBS

Where an employer has more than one (1) job under construction and it becomes necessary to change the men to another job, Bricklayers shall not lose any time in changing and such change shall not take place during the lunch hour.

### FOREMAN

A. On any job where three (3) or more Bricklayers are employed, one shall be designated as foreman.

B. Any contractor who is a practical Bricklayer and a member of the International Union of BAC may act as foreman on his own work, provided there is no fine against him on the books.

C. On jobs employing more than one (1) foreman it is understood that as the job nears completion and/or reduction in force is required, a foreman may be reduced to the status of bricklayer with the consummate rate of pay. However, a foreman must be maintained throughout the length of a job.

D. Any bricklayer foreman who is supervising a masonry crew and a pre-cast crew may serve as foreman on both operation providing it is on the same job. Any pre-cast crew, composed of two or more bricklayers and working independently of the other masonry shall have one bricklayer employed as foreman and he shall be paid according to the rates established in the contract.

## WALKING STEWARDS

On jobs employing twenty-five (25) or more bricklayers it shall be the responsibility of the Job Superintendent and the Business Agent to determine if the job is hazardous and requires the services of a Walking Steward. The Steward shall perform his duties with the least inconvenience to the Employer as possible. The Steward will be the next to last bricklayer on the job, the foreman being last.

## APPRENTICES

On all jobs employing members of this union a ratio of one (1) apprentice to four (4) journeymen shall be maintained, subject to the classification of work involved and the availability of apprentices. All jobs employing four (4) bricklayers must employ at least one (1) Apprentice. This by-law must be adhered to in case of reducing crew. No Apprentice will be allowed to operate a masonry saw more than six (6) months during his apprenticeship.

## BUILDINGS OVER 5 STORIES

On buildings five (5) stories and over in height, the employer shall allow the Bricklayer fifteen (15) minutes before quitting time to reach the tool house, this also applies to stoves and blast furnaces safety scaffolds. If passenger elevator is available, this does not apply.

## TOOL HOUSE

On all jobs the Bricklayers shall be at the gang box at starting time.

Any job employing six (6) or more Bricklayers shall have a separate Tool House. All maintenance work done by Bricklayers in plants shall have separate tool houses.

## SAFETY

When there are Bricklayers working on any job and Structural Ironworkers or other workers are at work above them, said Bricklayers shall be provided with proper covering to protect them from danger. Such covering to be provided by the Employer and if the protection is refused, Bricklayers shall refuse to work on the job. A safe line shall be hung over every swinging scaffold or building for the protection of the men employed thereon. Proper provision shall be made on all sewer work for the protection of the Bricklayers working therein by properly building all scaffolds and bracing ditches. In every case where the Contractor tries to force the men to work under the

conditions considered by the latter to be dangerous to the Bricklayers shall refuse to work on or in the same until the matter is adjusted.

Bricklayers shall not work on any job above the smoke stack or hoisting engines, but must insist that the stacks shall be carried above the position where men are at work, or that it shall be far enough removed so that the smoke does not interfere with the men at work. All welding shall be properly shielded to protect all workers in the vicinity.

Bricklayers are to furnish their own hard hats.

Adequate lighting must be provided for Bricklayer's to perform their work.

## HOT WORK

The employer shall furnish each bricklayer the following items as required for the work being done. Non asbestos fireproof gloves, fireproof hood and safety glasses with wire in the lenses, long fireproof coat and pants, screen wire face shields, approved safety glasses where wire lenses are not required, rubber clogs, knee pads, skull hat liner for hard hats for winter use and hot work.

## REFRACTORY WORK AND ACID WORK

## REFRACTORY WORK

Refractory work shall be defined as but not limited to the building, lining or repairing of any furnaces, reactors, boilers, incinerators, coke ovens, acid tanks, or any petrochemical or heat-producing units that are constructed of any heat-resistant material such as but not limited to fire brick, refractory tile, insulating brick, thermal blankets, or any insulation material.

## ACID BRICK WORK

Acid brick work shall include but not be limited to the following: Preparation of concrete floors or tank walls prior to laying acid brick; the application of primers either by spray, brush or squeegee, the application of the required membrane shall be done by bricklayers; the laying of all acid brick or tile or either walls or floors and the pouring of all hot asphalt or sulfur cements behind the acid tank walls shall be the work of the bricklayers.

## SCAFFOLDS

Tubular scaffolds or any substitute for same shall be completely floored where there are no obstructions to prevent same. The practice of eliminating one or more scaffold boards is deemed to be dangerous and it shall be the duty of the steward to require that this section be observed.

A. Four (4) feet and six (6) inches of work shall be scaffold high and in no case shall Bricklayers reach down more than twelve (12) inches (1 foot) either inside or outside (red brick only).

B. All scaffolds shall be built under the supervision of the bricklayer foreman and four (4) feet, six (6) inches of brickwork above scaffold shall be deemed scaffold high.

C. On partition walls, where 4" and 6" concrete blocks are used, scaffold high shall be four (4) feet, eight (8) inches in height.

D. Any scaffold, used above first height scaffolds shall be four (4) feet in height (partition).

E. In 8" and 12" concrete blocks partition wall, four (4) feet shall be deemed scaffold high.

F. The employer shall furnish a suitable ladder or scaffold to get up and down scaffolds.

G. In no case shall bricklayers be laid off to permit the stocking up of scaffolds during work hours as long as the material is on the job, and in no case shall members lay off during working hours for the making of scaffolds but shall help to make the same themselves, where necessary to keep working.

H. No material will be stocked above a man's head on the scaffold he is working on.

## MASONRY SAWS

A. Members of this union who operate a masonry saw shall be furnished with waterproof gloves, goggles and other safety devices as required. These safety items are to be used and lost items are to be deducted from the employee's pay.

B. Apprentices may not operate a masonry saw except in the last six (6) month period of their apprenticeship.

C. Necessary safety equipment will be furnished when using a portable saw.

D. The above sections do apply to commercial work.

# JURISDICTION

Territorial jurisdiction of this Union include Fayette, Jefferson, Lamar, Marion, Shelby, Talladega, Walker and Winston Counties, including the cities of Oneonta and half of Clanton. also four (4) miles south of Pell City and southwest corner of Blount County through Locust Fork.  In 1994 Local #1 of Alabama took the area once covered by the now inactive Local #4 of Alabama.  This territorial jurisdiction includes Bibb, Greene, Hale, Marengo, Sumpter and Tuscaloosa Counties.

# WAGES

The following wage rates as scheduled below, shall become effective as of September 1, 1998 and extend through August 31, 2001 and continue thereafter from year-to-year unless terminated or amended under any scheduled increase for an approved fringe benefit.

|  | September 1998 | March 1999 | September 1999 | March 2000 |
|---|---|---|---|---|
| Journeyman Bricklayer | $16.96 | $17.36 | $18.36 | $19.46 |
| Journey Stone Mason | 16.96 | 17.36 | 18.36 | 19.46 |
| Caulker | 16.96 | 17.36 | 18.36 | 19.46 |
| Pointer | 16.96 | 17.36 | 18.36 | 19.46 |
| Cleaner | 16.11 | 16.51 | 17.51 | 18.61 |

FRINGE BENEFITS

|  | September 1998 | March 1999 | September 1999 | March 2000 |
|---|---|---|---|---|
| Pension | $1.50 | $1.50 | $1.50 | $1.50 |
| Health & Welfare | 1.35 | 1.35 | 1.35 | 1.35 |
| Apprentice Program | 0.12 | 0.12 | 0.12 | 0.12 |
| IMI | 0.03 | 0.03 | 0.03 | 0.03 |
| CAP | 0.05 | 0.05 | 0.05 | 0.05 |

APPRENTICE WAGE SCHEDULE:  1st Year - 70% of Journeyman's rate
2nd Year - 80% of Journeyman's rate
3rd Year - 90% of Journeyman's rate

Foreman – 3 to 5 Journeyman - $1.50 per hour above Journeyman rate
Foreman – over 5 Journeyman - $2.00 per hour above Journeyman rate

Any work done with carbon materials will receive fifty ($.50) above regular journeyman rate for a minimum of four (4) hours.

Any work done with acid type mortar will pay fifty ($.50) above regular journeyman's rate for a minimum of four (4) hours.

NOTE:  The union reserves the right to adjust the total wage/fringe package as conditions dictate. The total package is not to exceed the total wage fringe benefit package as negotiated by the union.

As permitted by the provisions of Section 302 (C) the Labor Management Act, as amended, the employer agrees to deduct once each week from the gross wages of each employee covered by

this agreement who signs authorization 3% of wages paid to said employee during the week as administrative dues.

## INSTRUCTIONS

Employer contributions shall be paid on all man-hours worked and shall be paid into each of the funds. All contributions due for a given month shall be received in the Administrator's Office on or before the tenth of each succeeding month. The contractor will make checks payable as directed on the benefit report forms. Checks shall be payable to:

1) Bricklayers and Trowel Trades International Pension Fund
2) BAC Local #1 of Alabama Fringe Benefit Funds
3) BAC Local #8 Health and Welfare Fund
4) Construction Advancemnet Program of Alabama

## FRINGE BENEFITS

Reasonable attorney fees, court costs and other expense accrued in the collection of delinquent Pension, Health & Welfare, Construction Advancement Program and properly executed Administrative Dues, payments shall be paid by the Employer.

Notwithstanding anything herein contained, it is agreed that in the event any employer is delinquent at the end of the a monthly period in the payment of his contributions to the Pension Fund and other Trust Funds created under this agreement, in accordance with the rules and regulations and Agreement and Declaration of Trust of the Trustees of such funds, after the proper official of the Local Union has given ten (10) days notice to the employer of such delinquent in Pension payments or any Trust under this agreement, the Union will no longer furnish men, until such delinquent payments are made. If the delinquent employer is a Sub-contractor, the prime contractor on said jobs will also be given a copy of a said notice. The provision applies only to the job where the contractor or sub-contractor is delinquent.

## ADMINISTRATIVE DUES

Effective January 1, 1987 and continuing thereafter during the term of this agreement and in accordance with the terms of an individual and voluntary written authorization check-off, membership dues in the a form permitted by the provisions of Section 302 (C) of the Labor Management Relations Act, as amended, the employer agrees to deduct once each week from the gross wages of each employee covered by the agreement who signs said authorization 3% of wages paid to said employee during the week, as Administrative Dues. All monies collected for Administrative Dues by the employer shall be paid to Bricklayers Local #1, Birmingham, Al or its duly appointed representative. The Administrative Dues which are deducted shall be paid monthly by the 10th day of the month following the month in which they were deducted and reported on forms supplied by the Local.

## SUNDRY

It will be permissible for bricklayers to have soft drinks on jobs, also it is permissible for bricklayers to bring their own soft drinks, except when such conflicts with insurance safety rules.

Masonry work shall not be sub-contracted to those who are not qualified masonry contractors and who do not carry Public Liability and Workers' Compensation.

Bricklayers shall be allowed five (5) minutes before quitting time in order to clean up tools, but shall remain on the job.

The Union will furnish men to those employers who sign this agreement and/or who have delegated bargaining authority to the R.C.A.

It is agreed that the masonry employer will provide drinking water if not otherwise provided.

The constitution and by-laws of Bricklayers Union No. 1 of Alabama are to be observed unless they are in conflict with this contract.

## LABOR SAVING DEVICES

It is agreed that there shall be no limitation placed on the output of the individual workman. There shall be no prohibition against the use of labor saving tools, machinery and other equipment as approved by the International Union provided the same are in good operating condition and their use does not constitute a hazard to life, limb or health. If any question arises as to the condition of such tools, machinery, equipment, or devices, the decision of any regularly employed safety engineer for any of the insurance companies authorized to do business in Alabama shall be binding upon the parties signatory hereto.

No bricklayer working under this agreement shall be allowed to work from any labor saving device covered by the established bricklayers jurisdiction not erected or operated by the qualified bricklayer.

## SPEED LEADS

In all cases, speed leads are to be installed, erected, coursed, and the line raised by Bricklayers. For any violation of the above, the steward will immediately notify the Business Agent to work out a mutual agreement satisfactory to the Contractor and Union.

## PENSION FUND

Effective May 1, 1976, there has heretofore been established by the Labor Relations Division of the Alabama Branch AGC and Bricklayers International Union No. 1 of Alabama a Pension Fund which is known as the Bricklayers and Trowel Trades International Pension Fund. The Fund replaces the Pension Fund established in 1968 by the aforementioned parties.

The Pension Fund is funded and financed by the employer contributions to the fund, as set out in the above rates and effective on dates indicated.

Each employer who delegates his bargaining authority to the R.C.A., agrees to be bound by the Declaration of Trust establishing said pension fund and hereby irrevocably designates as its representatives on the Board of Trustees such Trustees together with their successors selected in the manner provided in said Declaration of Trust, and agrees to be bound by all actions taken by said employer trustees pursuant to said Declaration of Trust.

Case 1:08-cv-00781-RJL    Document 1-2    Filed 05/06/2008    Page 15 of 15

Each employer shall pay monthly into the Bricklayers and Trowel Trades International Pension Fund the amount scheduled to the Collective Bargaining Agreement for each actual hour paid for or worked in the preceding month, by all employees covered by said agreement. Said payments shall be made on the dates in the form and manner and in accordance with the rules and regulations adopted by the trustees of said Fund.

All contractors who do not delegate their bargaining authority to the R.C.A. must sign the standard form of participation which will be supplied by the Local.

## CONSTRUCTION ADVANCEMENT PROGRAM OF ALABAMA

Section 1. The Employer agrees to be bound by the Agreement and Declaration of Trust entered into as of May 4, 1970 establishing the Construction Advancement Program of Alabama and by any amendments to said Trust Agreement.

Section 2. The Employer irrevocably designates as his representatives among the Trustees of said fund such Trustees as are named in the said Agreement and Declaration of Trust as employer trustees, together with their successors selected in the manner provided in said agreement and Declaration of Trust as the document may be amended from time to time.

Section 3. The Employer shall pay monthly into the Construction Advancement Program of Alabama the amount scheduled in the Agreement for each hour paid for or worked in the preceding month, by all employees covered by said Agreement. Said payments shall be made on the dates, in the form and manner and in accordance with the rules and regulations as adopted by the trustees of said Fund.

It is agreed between the parties of this contract that the Construction Advancement Program may not be used for strike breaking or to the detriment of this union in any manner.

## APPRENTICE PROGRAM

Effective March 4, 1968, there has heretofore been established by the Labor Relations Alabama Branch Associated General Contractors of America, Inc., and Bricklayers International Union No. 1 of Alabama, an Apprenticeship Fund which is known as the Apprenticeship Fund.

The Apprenticeship Fund is funded and financed by employer contributions to the fund, as set put in the above rates and effective on the dates indicated.

Each employer who delegates his bargaining authority to the R.C.A. agrees to be bound by the Declaration of Trust establishing said Apprenticeship Fund and hereby irrevocably designates as its representatives on the Board of Trustees such Trustees together with their successors selected in the manner provided in said Declaration of Trust, and agrees to be bound by all actions taken by said trustees pursuant to said Declaration of Trust.

Each employer shall pay monthly into the Apprenticeship Fund the amount scheduled in the Collective Bargaining Agreement for each actual hour paid for or worked in the preceding month, by all employees covered by said agreement. Said payments shall be made on all the dates, in the

form and manner an in accordance with the rules and regulation adopted by the Trustees of said Fund.

## IMI

The contribution to the International Masonry Institute (IMI) shall be a total of the three ($.03) for each hour or portion thereof for which a covered employee receives pay.  The employers total contribution for each hour or portion thereof for which an employee receives pay shall be allocated as follows:

A.  Two ($.02) for market development; and

B.  One ($.01) for apprenticeship and training

The payment required above shall be made to the International Masonry Institute, which was established under and Agreement and Declaration of Trust, 14 March 1981, as the successor trust to the predecessor International Masonry Institute (established under and Agreement and Declaration of Trust, 22 July 1970 and/or to the predecessor International Masonry Apprenticeship Trust (established under an Agreement and Declaration of Trust November 6, 1974).

The undersigned parties do hereby ratify, adopt and confirm the Agreements and Declarations of Trust of the International Masonry Institute, and do hereby agree to be bound by each and every provision contained herein and do each and every act and thing as required and provided herein. Said parties do further consent to the appointment of the trustees heretofore designated and ratify, approve and consent to all matters heretofore done in connection with the creation and administration of said Agreement and Declaration of Trust of the International Masonry Institute.

## ENFORCEMENT

The union agrees to enforce the full terms of this agreement on all General Contractor Employers (private residence work excluded) including those who have not delegated bargaining authority to the R.C.A. and further, no men will be furnished without a written agreement, a copy of which will be filed with the R.C.A.

BRICKLAYER'S INTERNATIONAL
UNION NO. 1 OF ALABAMA

By: Henry T. Hagood, Jr.
For the Refractory Contractors
Association of Birmingham

By: Roland Collins

By: David Langham

By; Jimmy Hollander

By: Tom McDow

The undersigned employer does hereby agree to abide by all terms and conditions set forth in that certain agreement dated September 1, 1998 between Bricklayers International Union No. 1 of Alabama and the

The undersigned employer further agrees to be bound by the agreements and declarations of Trust establishing the Bricklayer's & Trowel Trades International Pension Fund, the Apprentice Fund, the Health and Welfare Fund and the Construction Advancement Program of Alabama (CAP), as amended.

Each Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees together with their successors selected in the manner provided in said agreements and Declaration of Trust and agrees to be bound by all actions taken by said employer Trustees pursuant to said Agreements and Declaration of Trust.

Each employer signatory hereto shall pay monthly into the Bricklayer's & Trowel Trades International Pension Fund, the amounts scheduled in the collective bargaining agreement for each actual hour paid for or worked in the preceding month for all employees covered by said agreement. Said payment shall be made on the dates in the form and manner in accordance with the rules and regulations adopted by the Trustees if said Funds.

*Reno Construction Co. L.L.C.*

_____
Employer

BRICKLAYER'S INTERNATIONAL UNION
NO. 1 OF ALABAMA

By: Roland W. Collins, Business Agent

*1184 24TH Ave. Hueytown, AL.*
Address

*205-428-1010*
Phone

_____

_____
By

JS-44
(Rev.1/05 DC)

| **I (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|

JOHN FLYNN, et al.

RENO CONSTRUCTION CO., LLC

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___11001___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Ira R. Mitzner (202) 420-2200
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

ATTORNEYS (IF KNOWN)

---

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E. General Civil (Other)** OR **○ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

ERISA - Complaint filed for recovery of delinquent contributions - 29 U.S.C. Sections 1002, 1132, 1145

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:  YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.